**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

MICHAEL THORPE et al.,

                  Plaintiffs,

            v.

COUNTY OF ST. LAWRENCE
et al.,

                  Defendants.

7:15-cv-736
(GLS/TWD)
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Law Office of Andrew L. Hoffman, PC<br>261 Madison Avenue — 12th Floor<br>New York, NY 10016 | ANDREW L. HOFFMAN, ESQ. |
| **FOR THE DEFENDANTS:** | |
| *County of St. Lawrence, Nicole Duvé,<br> and Amanda Nissen*<br>Hancock, Estabrook Law Firm<br>1500 AXA Tower I<br>100 Madison Street<br>Syracuse, NY 13221-4976 | ZACHARY M. MATTISON, ESQ. |
| *City of Ogdensburg, Harry McCarthy,<br>Robert Wescott, David Layng, and<br>John Does #1-10*<br>Sugarman Law Firm LLP<br>211 West Jefferson Street<br>Syracuse, NY 13202 | PAUL V. MULLIN, ESQ. |

**Gary L. Sharpe
Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs Michael Thorpe and Michael Durand (hereinafter "Durand") commenced this action pursuant to 42 U.S.C. § 1983 against defendants County of St. Lawrence, former St. Lawrence County District Attorney Nicole Duvé, former St. Lawrence County Assistant District Attorney Amanda Nissen, City of Ogdensburg, Detective Harry McCarthy, Detective Robert Wescott, Detective David Layng, and John Does #1-10, unknown police officers, alleging violations of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (Compl., Dkt. No. 1.) Pending are motions to dismiss filed by the County and the City defendants. (Dkt. Nos. 15, 16.) For the reasons that follow, the motions are granted in part and denied in part.

## II. Background[1]

Between 2012 and 2013, Thorpe and Durand were indicted, tried, and acquitted for the robbery and murder of Ralph "Gene" Lawton, an eighty-three-year-old man from Ogdensburg, New York. (Compl. ¶¶ 1, 18,

---

[1] The facts are drawn from Thorpe and Durand's complaint and presented in the light most favorable to them.

68, 80.) Thorpe and Durand were incarcerated for approximately one year while awaiting trial. (*Id.* ¶ 69.) Ultimately, the jury only convicted Tony Lalonde, another co-defendant in the criminal case. (*Id.*)

The robbery and murder occurred on November 18, 2010 when three masked individuals broke into Lawton's home. (*Id.* ¶¶ 17-18.) Police identified Thorpe and Durand as suspects after they learned from a witness who had third-hand knowledge that the two spoke about robbing Lawton the day before the crime occurred. (*Id.* ¶¶ 21-24.) Thorpe and Durand were then interviewed by police and provided DNA samples. (*Id.* ¶ 26.) Their DNA was tested and excluded from DNA found on a glove from the crime scene. (*Id.* ¶ 27.) Karen Durand, Thorpe's girlfriend and Durand's sister, informed police that both were at home with her on the night of the incident. (*Id.* ¶ 28.) Once identified as suspects, Thorpe and Durand allege that police and prosecutors agreed to pursue their convictions and ignore or suppress any evidence which exonerated them. (*Id.* ¶¶ 24, 96.)

At his interview with Detectives Harry McCarthy, Robert Wescott, and David Layng, Thorpe admitted that he called Lawton on the day of the murder to buy drugs, and he went to Lawton's house to obtain them. (*Id.* ¶

3

47.) Thorpe told police that the phone he used to call Lawton was owned by Karen Durand, and "the phone was one of several he used, but of those used, it was the one he used most often." (*Id.* ¶ 48.) Karen Durand explained to police that it was a community phone. (*Id.* ¶ 49.) Thorpe and Durand allege that Detectives McCarthy and Wescott fabricated this evidence by improperly characterizing the phone as one used "primarily" by Thorpe. (*Id.* ¶ 52.)

Lalonde became a suspect after he was implicated by several witnesses. (*Id.* ¶ 29.) He was interviewed by police, failed a lie detector test, and provided DNA which could not be excluded from the glove at the crime scene. (*Id.* ¶¶ 30, 32.) Lalonde identified "Witness X" as his alibi. (*Id.* ¶ 30.)

Thorpe and Durand allege that the police did not have probable cause to arrest them, and Detective McCarthy noted that District Attorney Duvé did not want them arrested until she prepared an indictment. (*Id.* ¶¶ 53-55.) To support the indictment, Thorpe and Durand allege that police and prosecutors either coerced false testimony or conferred a benefit upon several witnesses. (*Id.* ¶¶ 41-44, 61-67, 71, 83.) Specifically, the prosecutors offered a plea bargain to Victor Gardner on an unrelated

4

burglary charge in exchange for testimony that connected Lalonde, Thorpe, and Durand to the crime. (*Id.* ¶¶ 38-41.) Additionally, Thorpe and Durand allege that "Witness X" was coerced by Detectives Wescott, McCarthy, and Layng as well as prosecutors to falsely implicate them in the crimes. (*Id.* ¶¶ 65-67.)

At the grand jury proceeding, Thorpe and Durand allege that Assistant District Attorney Nissen misrepresented forensic evidence by stating that plaintiffs' DNA could not be excluded from that found at the crime scene. (*Id.* ¶¶ 58-59.) On June 18, 2012, the grand jury indicted Lalonde, Thorpe, and Durand. (*Id.* ¶ 68.) All three were then arrested and remanded pending trial. (*Id.*) Following trial, the jury acquitted Thorpe and Durand and convicted Lalonde for Lawton's murder. (*Id.* ¶ 69.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## IV. Discussion

### A. Prosecutorial Immunity[2]

County defendants seek to dismiss claims against Nissen and Duvé on the basis of prosecutorial immunity. (Dkt. No. 15, Attach. 3 at 8-10.)

Prosecutors are absolutely immune from liability for the "initiation and pursuit of a criminal prosecution, including the presentation of the state's case at trial [or before a grand jury]." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). However, absolute immunity only protects conduct that is "intimately associated with the judicial process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and does not extend to the prosecutor's role as an investigator, *Hill*, 45 F.3d at 661. Courts use a functional approach to determine whether a prosecutor is acting as an advocate or an investigator. *See Buckley*, 509 U.S. at 273. "A prosecutor is functioning in an investigatory capacity in a criminal case up and until he or she has gathered sufficient evidence to demonstrate probable cause and effect an arrest." *Brown v. Oneida Cty.*, No. 6:15-cv-0849, 2016 WL 4275727, at

---

[2] The court also considered and rejects the County's alternative argument that Duvé had no personal involvement because, as discussed *infra*, plaintiffs sufficiently allege constitutional claims against her.

6

*10 (N.D.N.Y. Aug. 12, 2016) (internal quotation marks and citation omitted); *see also Buckley*, 509 U.S. at 274.

It is too early in the litigation to determine if Duvé and Nissen are entitled to absolute immunity for the entirety of their actions because Thorpe and Durand allege conduct that is plausibly investigatory. Thorpe and Durand allege that Duvé and Nissen fabricated evidence by coercing false testimony from "Witness X" to connect them to the crime. (Compl. ¶¶ 67, 88.) Duvé and Nissen allegedly coerced "Witness X" to provide false testimony at some point prior to the grand jury proceeding. (*Id.*) However, Thorpe and Durand were arrested *after* the grand jury returned an indictment, (*id.* ¶ 68), suggesting that probable cause was lacking to effectuate an arrest before then. If Duvé and Nissen coerced "Witness X's" testimony to provide probable cause for the arrest, then they would be acting as investigators and not advocates. *See Hill*, 45 F.3d at 662-63 (explaining that "when a prosecutor manufactures evidence for the purpose of obtaining probable cause to arrest a suspect," the actions are deemed to be investigatory in nature and cannot be "transformed into advocacy simply by being characterized as work in preparation for trial"). If Thorpe and Durand can ultimately prove that probable cause was lacking when

7

evidence was allegedly fabricated, then Duvé and Nissen would be potentially entitled to qualified immunity. *See id.* at 661. On this record, plaintiffs have alleged facts to suggest that Duvé and Nissen were acting in an investigatory manner. Thus, a decision on immunity is premature.

B.  **Malicious Prosecution**

City defendants argue that plaintiffs have not sufficiently alleged a malicious prosecution claim because, among other things, they cannot overcome the presumption of probable cause from the grand jury's indictment. (Dkt. No. 16, Attach. 3 at 3-6.) The court disagrees.

To state a claim for malicious prosecution, a plaintiff must allege a violation of his Fourth Amendment rights predicated on the elements of a malicious prosecution claim under state law. *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). In New York, a plaintiff must show: (1) the initiation of a criminal proceeding; (2) terminated in his favor; (3) a lack of probable cause; and (4) actual malice by the defendants. *See id.* A grand jury indictment creates a presumption of probable cause. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). However, this presumption may be rebutted "by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police

8

conduct undertaken in bad faith." *Id.* (internal quotation marks and citation omitted); *see Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003).

Here, Thorpe and Durand have adequately plead the elements of a malicious prosecution claim against all individual defendants. First, Duvé and Nissen filed charges against Thorpe and Durand on the basis of the investigation by Detectives Wescott, McCarthy, and Layng and other John Doe officers. (Compl. ¶¶ 26, 52, 58, 60, 63, 68-69, 78, 83); *see Cameron v. City of New York*, 598 F.3d 50, 63-64 (2d Cir. 2010) (noting police officers initiate criminal proceedings by supplying false evidence to a prosecutor). Second, Thorpe and Durand received a favorable termination because the jury acquitted them of the robbery and murder charges. (Compl. ¶¶ 2, 80.) Third, Thorpe and Durand sufficiently allege a lack of probable cause and overcome the presumption of the grand jury's indictment by stating fabricated evidence was used to procure the indictment. *See Shabazz v. Kailer*, No. 15-CV-2798, 2016 WL 4258134, at *3 (S.D.N.Y. Aug. 12, 2016) (holding that allegations that an indictment was obtained by a false police affidavit and false photographic evidence overcame the presumption on a motion to dismiss). Specifically, Thorpe and Durand allege that Detectives Wescott and McCarthy

9

mischaracterized Thorpe's telephone use, and they, along with prosecutors, coerced "Witness X" to testify falsely before the grand jury.[3] (*Id.* ¶¶ 52, 61-65, 67.)  Finally, because "[a] lack of probable cause generally creates an inference of malice," *Boyd*, 336 F.3d at 78, Thorpe and Durand sufficiently allege the final element.  As such, dismissal is not appropriate on this basis.

C. <u>Fair Trial</u>

City and County defendants contend that plaintiffs do not have a viable fair trial claim because they fail to allege which defendants created the allegedly fabricated evidence.  (Dkt. No. 15, Attach. 3 at 15-16; Dkt. No. 20 at 3-4.)  Again, the court disagrees.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d

---

[3] City defendants contend that absolute immunity attaches to the testimony of investigating officers before a grand jury. (Dkt. No. 16, Attach. 3 at 4.) However, because the complaint does not allege that Detectives Wescott and McCarthy testified before the grand jury, the court cannot decide whether immunity should apply at this stage.

Cir. 1997). To plead a claim for deprivation of a fair trial, a plaintiff must allege that an "(1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to the prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).

Here, as discussed in Part IV.A-B, Thorpe and Durand allege that prosecutors Duvé and Nissen as well as Detectives Wescott, McCarthy, and Layng fabricated evidence by coercing false testimony from "Witness X." (Compl. ¶¶ 61-67, 86-88.) They allege that this evidence was then submitted at trial and misled the jury. (*Id.* ¶¶ 65-66, 89-90.) Finally, Thorpe and Durand allege that they spent approximately a year in prison awaiting their criminal trial. (*Id.* ¶ 69.) Accepting these allegations as true, Thorpe and Durand plausibly pleaded the elements of a claim to deprivation of fair trial. *See Engels v. Town of Potsdam*, No. 7:13-cv-751, 2014 WL 3729069, at *3 (N.D.N.Y. July 25, 2014) (holding that plaintiff sufficiently pleaded a fair trial claim based on allegations that a defendant officer created a false police report that was submitted at plaintiff's criminal trial).

**D.** **Conspiracy**

City defendants argue that plaintiffs fail to state a claim for conspiracy because they have not alleged an underlying constitutional violation. (Dkt. No. 16, Attach. 3 at 8-9.) The court disagrees.

To state a claim for conspiracy, a plaintiff must allege "(1) an agreement between a state actor and a private party [or at least two state actors]; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty of Nassau*, 292 F.3d 307, 325-26 (2d Cir. 2002). Here, Thorpe and Durand allege that officers and prosecutors agreed to and ultimately did bring false charges against them for Lawton's murder and robbery based on fabricated evidence and coerced witness testimony. (Compl. ¶¶ 24, 96.) These allegations suffice to state a claim for conspiracy and contain the requisite particularity to withstand a motion to dismiss. *See Dwares v. City of New York*, 985 F.2d 94, (2d Cir. 1993) (noting "[d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct" (internal quotation marks and citation omitted)), *overruled on other grounds*, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163 (1993).

**E.     Failure to Intercede**

City defendants assert that plaintiffs' failure to intercede claim lacks sufficient factual allegations. (Dkt. No. 20 at 6.) The court disagrees.

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Accordingly, an officer is liable when "(1) [he] had a realistic opportunity to intervene and prevent harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Thorpe and Durand premise their failure to intervene claim on their malicious prosecution and fair trial claims. (Compl. ¶ 101.) They allege that the detectives both knew of and participated in witness coercion. (Compl. ¶¶ 65-67.) These allegations suffice to state a claim that the detectives witnessed allegedly unconstitutional conduct and failed to intervene. *See Anderson*, 17 F.3d at 557.

### F. Municipal Liability

City and County defendants argue that plaintiffs failed to plead a

13

custom or policy by either municipality to violate their constitutional rights. (Dkt. No. 15, Attach. 3 at 4-7; Dkt. No. 16, Attach. 3 at 6.) The court agrees.

To state a claim for municipal liability, a plaintiff must allege that he suffered a constitutional violation due to a municipality's official policy or custom. *See Coleman v. City of Syracuse*, No. 5:09-CV-1391, 2011 WL 13808, at *2 (N.D.N.Y. Jan. 4, 2011). A municipal policy or custom can be established by alleging:

> (1) a formal policy, promulgated or adopted by the [municipality]; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights . . .; or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a custom or usage and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials.

*Id.* (internal quotation marks and citation omitted). Claims based on a failure to train or supervise require a showing of "deliberate indifference to the rights of those with whom the municipal employees will come into contact." *Id.* (internal quotation marks and citation omitted). However, "the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least

14

circumstantially, such an inference." *Dwares*, 985 F.32d at 100 (internal quotation marks and citation omitted).

Here, Thorpe and Durand only allege that the County and City are liable based on the acts of policymaking officials and the practices of subordinate municipal employees. (Compl. ¶¶ 108, 112.) Specifically, they allege that all defendants were final policymakers who failed to train, discipline, or supervise employees regarding fabricated evidence, exculpatory evidence, and false witness testimony. (*Id.* ¶ 112.) However, this conclusory, boilerplate allegation does not support the inference that a policy or practice existed. *See Bradley v. City of New York*, No. 08-CV-1106, 2009 WL 1703237, at *4 (E.D.N.Y. June 18, 2009) (dismissing plaintiff's municipal liability claims as conclusory for failure to train or promulgate appropriate regulations). Accordingly, Thorpe and Durand's claims against the City and County must be dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the County's motion (Dkt. No. 15) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims against the County, and

**DENIED** in all other respects; and it is further

**ORDERED** that the City's motion (Dkt. No. 16) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to all claims against the City, and

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk is directed to terminate the County and the City from this action; and it is further

**ORDERED** that the parties contact Magistrate Judge Thérèse W. Dancks to schedule further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 5, 2016
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge