**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL THORPE et al.,**

                              **Plaintiffs,**                    **7:15-cv-736**
                                                                 **(GLS/TWD)**

                    **v.**

**NICOLE DUVE et al.,**

                              **Defendants.**
_____

**APPEARANCES:**                       **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Law Offices of Andrew L.
Hoffman, PC                            ANDREW L. HOFFMAN, ESQ.
155 East 44th Street
6th Floor
New York, NY 10017

**FOR THE DEFENDANTS:**
*Nicole Duve & Amanda Nissen*
Hancock Estabrook, LLP                 JOHN L. MURAD, JR., ESQ.
1800 AXA Tower I                       CHRISTOPHER HALL, ESQ.
100 Madison Street
Syracuse, NY 13202

1500 AXA Tower I                       JAMES P. YOUNGS, ESQ.
100 Madison Street
Syracuse, NY 13202

*Harry McCarthy, Robert Wescott*
*& David Layng*
Sugarman Law Firm LLP                  PAUL V. MULLIN, ESQ.
211 West Jefferson Street
Syracuse, NY 13202

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs Michael Thorpe and Michael Durand commenced this action against defendants Nicole Duve, the former St. Lawrence County District Attorney; Amanda Nissen, the former Chief Assistant District Attorney of the St. Lawrence County District Attorney's Office (DAO) (hereinafter "County defendants"); and City of Ogdensburg Police Department (OPD) detectives Harry McCarthy, Robert Wescott, and David Layng (hereinafter "City defendants") pursuant to 42 U.S.C. § 1983.[1]  (Compl., Dkt. No. 1.) Now pending are motions for summary judgment filed by County defendants, (Dkt. No. 105), and City defendants, (Dkt. No. 106).  For the reasons that follow, both motions are granted.

---

[1]  John Does #1-10 have yet to be identified by plaintiffs, and, thus, are hereby dismissed from the action.  *See Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 WL 3822220, at *10 (S.D.N.Y. Sept. 4, 2012) ("The Court dismisses John Doe [Defendants] from the case without prejudice for failure to prosecute, as Plaintiff did not identify the John Doe Defendants by the end of discovery.").

## II.  **Background**

**A.**    **Facts**[2]

Between 2012 and 2013, plaintiffs were indicted, tried, and acquitted for the robbery and murder of Gene Lawton, an elderly man from Ogdensburg, New York.  (Dkt. No. 113, Attach. 1 at 24.)  Plaintiffs were incarcerated for approximately one year while awaiting trial.  (*Id.*)  "Ultimately, the jury only convicted Tony Lalonde, another co-defendant in the criminal case."  (*Id.* at 25.)

The robbery and murder occurred on November 18, 2010, when masked men broke into Lawton's residence.  (County Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 105, Attach. 1; City Defs.' SMF ¶¶ 8, 56, Dkt. No. 106, Attach. 2.)  OPD officers arrived on the scene and began a preliminary investigation.  (County Defs.' SMF ¶ 2; City Defs.' SMF ¶ 9.)  Plaintiffs became suspects shortly thereafter.  (County Defs.' SMF ¶ 3.)  Wescott was named the lead investigator on the case, and the DAO was contacted by OPD.  (City Defs.' SMF ¶¶ 30, 33.)

Layng interviewed Thorpe on the night of the crime, and Thorpe provided Layng with his basic background information, as well as a mobile

_____

[2]  Unless otherwise noted, the facts are undisputed.

3

phone for OPD to inspect.  (*Id.* ¶¶ 21-22.)  Thorpe admitted to calling

Lawton a week before the murder in order to purchase drugs.  (*Id.* ¶¶ 23-

24, 28.)  He also admitted that he went to Lawton's apartment on the day of

the crime to purchase drugs.  (*Id.* ¶¶ 29, 54.)  Thorpe was interviewed a

second time in March 2011.  (*Id.* ¶ 36.)  Thorpe's phone records showed

that, although he and Lalonde ordinarily only talked approximately one time

per month, there were numerous calls made between them shortly before

and shortly after the robbery and murder.  (*Id.* ¶¶ 37, 137.)  According to

City defendants, Thorpe explained to them that, although the mobile phone

belonged to his girlfriend, he primarily used it.  (*Id.*)  Plaintiffs contend that

City defendants mischaracterized what Thorpe said, and that he actually

said it was a "community phone" that he personally used most often; not

that the phone was primarily used by him.  (Dkt. No. 114, Attach. 1 at 66-

67.)

City defendants also interviewed, among others, Samantha Mashaw,

who was with plaintiffs and Lalonde on the day of the crime, Victor

Gardner, an acquaintance of plaintiffs, Lawton's roommate, and two

additional eye witnesses.  (City Defs.' SMF ¶¶ 43-46, 53, 56-57, 77-78.)

Approximately eighteenth months after the robbery and murder, City

4

defendants informed the DAO that they were done investigating the crime, and Nissen was then assigned as the case's primary prosecutor.  (County Defs.' SMF ¶¶ 5, 8; City Defs.' SMF ¶ 10.)  Defendants assert that Nissen reviewed the documents created throughout OPD's investigation, and determined that there was probable cause to present the case against plaintiffs to the grand jury.  (County Defs.' SMF ¶¶ 9; City Defs.' SMF ¶¶ 11-12.)  Plaintiffs deny this, and contend that the decision to present the case to the grand jury was made by Duve before Nissen had even been assigned to the case.  (Dkt. No. 113, Attach. 1 at 5.)  City defendants assert that the decision to present the case to the grand jury was solely that of the DAO, and that they had "no say" in that decision.  (City Defs.' SMF ¶¶ 16-17.)  Plaintiffs contend that the decision was made in collaboration between all defendants.  (Dkt. No. 114, Attach. 1 at 5-6.)

The grand jury indicted plaintiffs and Lalonde on charges of robbery and murder.  (County Defs.' SMF ¶ 12; City Defs.' SMF ¶¶ 162-63.)  Eventually, after plaintiffs challenged the indictments, County Court in St. Lawrence County reviewed them and found that the evidence of both crimes was legally sufficient to give reasonable cause for the grand jury to believe that plaintiffs committed the crimes.  (City Defs.' SMF ¶ 165.)

Plaintiffs assert that County Court made this decision without being privy to the underlying documents and without knowledge of the "deeply misleading nature of Nissen's [g]rand [j]ury presentation." (Dkt. No. 114, Attach. 1 at 58.) Plaintiffs were arrested subsequent to the indictment. (County Defs.' SMF ¶ 13.)

Mashaw testified at the grand jury proceeding and at trial that she drove plaintiffs and Lalonde to Lawton's residence on the day of the crime in order to purchase drugs from Lawton. (*Id.* ¶¶ 17-18; City Defs. SMF ¶¶ 77-78, 83-85.) Plaintiffs assert that her testimony was inconsistent with Mashaw's previous statements and the testimony of other witnesses. (Dkt. No. 114, Attach. 1 at 25-28.) Plaintiffs also assert that Mashaw was "harassed" by defendants and coerced into falsely testifying. (Dkt. No. 113, Attach. 1 at 8-13, 35.) Defendants contend that Mashaw was never told, or coerced, to provide false testimony. (County Defs.' SMF ¶¶ 19-20; City Defs.' SMF ¶ 87.)

Gardner provided testimony at the grand jury proceeding and at trial. (County Defs.' SMF ¶¶ 21-22; City Defs.' SMF ¶ 95.) Gardner testified that he heard Lalonde talking to Thorpe about robbing Lawton; that he found the car in which they were driving parked near Lawton's residence on the

night of the crime; that Lalonde told Gardner that he and plaintiffs committed the robbery; that Gardner helped Lalonde destroy certain evidence; that Thorpe told Gardner that he helped Lalonde commit the crime; and that Durand told him that he was present at the time of the crime.  (City Defs. SMF ¶¶ 97-98, 102-03, 108-09, 111-12.)  Plaintiffs contend that Gardner's testimony was in direct conflict with established facts and the testimony of other witnesses.  (Dkt. No. 114, Attach. 1 at 32-42.)  Plaintiffs also assert that Gardner was arrested for an unrelated burglary and was only "hoping to make a deal to avoid prison."  (Dkt. No. 113, Attach. 1 at 14-24; Dkt. No. 114, Attach. 1 at 17.)  County defendants contend that they had very little interaction with Gardner other than in connection with this testimony, and that Gardner's testimony was cogent and consistent throughout the criminal proceedings.  (County Defs.' SMF ¶ 23-24.)

In May 2013, Lalonde was convicted of robbery and murder, but plaintiffs were found not guilty.  (*Id.* ¶ 15; City Defs. SMF ¶ 166.)  Duve "did not prepare or present the case against [plaintiffs] at grand jury or trial." (County Defs.' SMF ¶ 16.)

7

**B.    Procedural History**

Plaintiffs commenced this action on June 15, 2015, bringing claims

pursuant to 42 U.S.C. § 1983 against the County of St. Lawrence, the City

of Ogdensburg, County defendants, and City defendants.  (Compl.)

Defendants filed motions to dismiss shortly thereafter.  (Dkt. Nos. 15-16.)

The court granted in part and denied in part both motions to dismiss,

dismissing the claims against the County of St. Lawrence and the City of

Ogdensburg, but allowing all claims against County defendants and City

defendants to proceed.  (Dkt. No. 24 at 15-16.)

Accordingly, the following causes of action, all brought pursuant to

42 U.S.C. § 1983, remain against all defendants: (1) a malicious

prosecution claim; (2) a claim for denial of a right to a fair trial; (3) a

conspiracy claim; and (4) a failure to intercede claim.  (*See generally*

Compl.; Dkt. No. 24.)  After a lengthy discovery process, which concluded

in September 2019, (Dkt. No. 89), defendants filed the pending motions for

summary judgment, (Dkt. Nos. 105-06).

### III.  Standards of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and

will not be repeated here.  For a full discussion of the governing standard,

8

the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

### A.    Malicious Prosecution

Defendants move for summary judgment as to plaintiffs' malicious prosecution claim, arguing, among other things, that plaintiffs' grand jury indictments establish a presumption of probable cause, which defeats malicious prosecution claims, and that plaintiffs cannot rebut this presumption.[3]  (Dkt. No. 106, Attach. 3 at 2-7; Dkt. No. 117 at 5-7.) Plaintiffs counter that the presumption of probable cause created by their indictments is rebutted by defendants' submission and reliance upon false evidence, their coercion of key witnesses, and other conduct undertaken by them in bad faith.  (Dkt. No. 113 at 11-12; Dkt. No. 114 at 3-5.)

The elements of a malicious prosecution claim under Section 1983 are: "(1) the defendant initiated a prosecution against plaintiff, (2) without

---

[3] Although County defendants focus their moving brief on prosecutorial immunity, (*see generally* Dkt. No. 105, Attach. 19), the arguments advanced by City defendants that are addressed by the court in this Memorandum-Decision and Order necessarily apply in equal force to all defendants.  Moreover, County defendants address these arguments on reply. (*See generally* Dkt. No. 117.)

probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (citation omitted). "When raising a malicious prosecution claim under Section 1983, a plaintiff must also show a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks and citation omitted). "The existence of probable cause is a complete defense to a claim of malicious prosecution." *Dufort v. City of New York*, 874 F.3d 338, 351 (2d Cir. 2017) (internal quotation marks and citation omitted).

The grand jury indictments returned against plaintiffs are fatal to their malicious prosecution claim. Indeed, a grand jury indictment creates "a presumption of probable cause that can only be overcome by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015) (internal quotation marks and citations omitted); *see Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) ("The existence of probable

cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." (internal quotation marks, alteration, and citation omitted)).

Plaintiffs have proffered no facts from which a reasonable jury could infer that the indictment was the product of fraud, perjury, the suppression of evidence, or other bad faith conduct on the part of defendants.  In the voluminous record in this case, plaintiffs point to three instances of alleged fraud and/or bad faith: (1) that defendants mischaracterized Thorpe's statements regarding the mobile phone that was used to call Lalonde and Lawton on the day of the robbery and murder, *i.e.*, instead of portraying it as a telephone he primarily used, among others, they portrayed it as a telephone primarily used by Thorpe; (2) that defendants coerced Mashaw into providing false testimony against plaintiffs by promising her immunity; and (3) that defendants coerced Gardner into providing false testimony against plaintiffs by promising him reduced criminal liability in an unrelated burglary case.  (Dkt. No. 114 at 4-5.)

First, with respect to the issue surrounding the characterization of Thorpe's telephone use, the court is not satisfied that defendants' conduct constitutes proffering false evidence.  Although there is an issue as to how

Thorpe characterized his usage of the mobile phone to defendants,

Thorpe, himself, testified that he does not recall how exactly he described

the usage.  (Dkt. No. 107, Attach. 23 at 73.)

Further, the record makes clear that Thorpe provided the telephone

number assigned to the mobile phone to City defendants as his phone, (*id.*,

Attach. 19 at 12), he admitted to using it on the day of the robbery and

murder to call Lawton and Lalonde, (*id.*, Attach. 23 at 73), he showed City

defendants the calls on the mobile phone that he admitted he made and

that were later used as evidence, (*id.*), and he admitted that he did not

know of anybody else who used the mobile phone on the day of the

robbery and murder, (*id.*, Attach. 28 at 39).

The allegedly false evidence needed to overcome the presumption of

probable cause created by the grand jury indictments must be material and

due to more than mere mistake of fact or negligence.  *See Burgess v.

DeJoseph*, No. 5:14-CV-1371, 2017 WL 1066662, at *6 (N.D.N.Y. Mar. 21,

2017), *aff'd*, 725 F. App'x 36 (2d Cir. 2018) (finding that the presumption of

probable cause created by grand jury indictments was not rebutted

because "the most [the] [p]laintiff has presented the court is evidence of

mistake of fact or possible negligence" (citation omitted)); *see Manganiello*,

612 F.3d at 162 (noting that the alleged falsehood or omission must be as to "a fact crucial to the existence of probable cause" to rebut the presumption of probable cause).  There is ample evidence that Thorpe used the mobile phone on the day of the robbery and murder to call the victim and his convicted murderer, and there is no evidence that City defendants intentionally misrepresented Thorpe's statements to County defendants or that County defendants intentionally misrepresented the statements to the grand jury.

Accordingly, the semantics of Thorpe's characterization of his usage of the mobile phone simply do not constitute the kind of "false evidence" or "bad faith" that plaintiffs must show to rebut the presumption of probable cause.

Next, with respect to the issues of Mashaw's and Gardner's testimony, plaintiffs argue that Mashaw and Gardner were coerced into providing false testimony in lieu of immunity in the case of Mashaw, and reduced criminal liability for an unrelated criminal charge in the case of Gardner.  (Dkt. No. 113 at 12-13; Dkt. No. 114 at 4-5.)  Offering deals of immunity and reduced criminal liability in exchange for testimony is an ordinary part of law enforcement work and does not defeat the presumption

13

of probable cause created by plaintiffs' indictments.  *See Creighton v. City of New York*, No. 12 Civ. 7454, 2017 WL 636415, at *48 n.48 (S.D.N.Y. Feb. 14, 2017) ("[A] prosecutor's failure to disclose that a grand jury witness . . . received leniency in exchange for his testimony does not impair[ ] the integrity of the Grand Jury proceeding . . . because such information 'pertain[s] only to the collateral issue of . . . credibility and not the core question for the grand jury to decide as to whether a prima facie case exist[s]." (internal quotation marks and citation omitted)); *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246, 2013 WL 322613, at *6 n.83 (S.D.N.Y. Jan. 28, 2013) ("Additionally, the fact that the witnesses were offered reduced sentences in exchange for their testimony does not prove that their statements were coerced." (citation omitted)).

Moreover, as far as the court can tell from the record, as presented by plaintiffs, neither Mashaw nor Gardner has said that they were lying or were asked to lie.  Arguments that County defendants and City defendants were implicitly asking Mashaw to lie by asking her to "tell the truth" and to give them the "correct" story, (Dkt. No. 113 at 6-8; Dkt. No. 114 at 6-7), is just speculation.  And mere inconsistencies between testimony of witnesses and other evidence is not sufficient to overcome the presumption

of probable cause, as it is up to the grand jury to assess witness credibility

when determining whether the prosecutors have established a prime facie

case against a criminal defendant.  *See Burgess*, 2017 WL 1066662, at *5,

7 (noting that "the fact that . . . witnesses gave inconsistent statements is

not extraordinary," and finding that these inconsistencies do not rebut the

presumption of probable cause because "it was the prosecutor, not the

Defendant officers, who had the discretion and authority to decide what

evidence to present to the grand jury, and [the prosecutor] was under no

duty to present every item of arguably exculpatory evidence in seeking an

indictment" (internal quotation marks and citations omitted)).

Accordingly, the issues surrounding Mashaw's and Gardner's

testimony do not defeat the presumption of probable cause either, and,

thus, defendants' motions for summary judgment as to plaintiffs' malicious

prosecution claim are granted, as no reasonable jury could find in plaintiffs'

favor absent impermissible speculation and conjecture.

**B.**    **Additional Claims**

Because plaintiffs' malicious prosecution claim is dismissed, it

follows, as argued by defendants, (Dkt. No. 106, Attach. 3 at 7-9; Dkt.

No. 117 at 8-9), that plaintiffs' claims of denial of a right to a fair trial,

conspiracy, and failure to intercede, which all rely on the same or similar

facts and arguments as those supporting the malicious prosecution claim,

(Dkt. No. 113 at 12-15; Dkt. No. 114 at 5-10), must be dismissed as well.

First, in order to maintain a fair trial claim based on fabrication of

information, plaintiffs must show that "an (1) investigating official

(2) fabricates information (3) that is likely to influence a jury's verdict,

(4) forwards that information to prosecutors, and (5) the plaintiff suffers a

deprivation of life, liberty, or property as a result." *Garnett v. Undercover*

*Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citation omitted).  In order

to maintain the claim against a police officer, plaintiffs must show "that the

officer created false information, the officer forwarded the false information

to prosecutors, and the false information was likely to influence a jury's

decision."  *Id.* at 280 (citation omitted).  "[G]overnment officials may be held

liable for fabricating evidence through false statements or omissions that

are both *material* and made *knowingly*."  *Morse v. Fusto*, 804 F.3d 538, 547

(2d Cir. 2015) (emphasis added).

Plaintiffs' fair trial claim must be dismissed for the same reasons as

described above.  *See supra* Part IV.A.  Namely, plaintiffs argument that

defendants' alleged mischaracterization of Thorpe's mobile phone usage

was material is not supported by the record due to Thorpe's demonstrated use of the telephone on the night of the crime, and his own admittance that he does not recall how exactly he described the usage to City defendants. *See id.*  And, further, offering witnesses immunity or reduced criminal liability in exchange for testimony are ordinary law enforcement activities that cannot form the basis of a due process claim.  *See id.*

Next, to sustain a conspiracy claim under 42 U.S.C. § 1983, plaintiffs must prove the existence of "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Morris v. Martin*, No. 5:16-cv-601, 2019 WL 5457767, at *5 (N.D.N.Y. Oct. 23, 2019) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  In other words, "a plaintiff must demonstrate that a defendant acted in a wilful manner, culminating in an agreement, understanding or 'meeting of the minds,' that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (some internal quotation marks and citation omitted).

Accordingly, in order to maintain their conspiracy claim, plaintiffs

must prove an actual, underlying constitutional violation.  *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("[A § 1983 conspiracy claim] will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right.").  Because the underlying claims to plaintiffs' conspiracy claim—claims of malicious prosecution and denial of a right to a fair trial, (Compl. ¶¶ 95-99)—have been dismissed, *see supra* Parts IV. A, B, plaintiffs' conspiracy claim must also be dismissed.  *See Singer*, 63 F.3d at 119.

Finally, a law enforcement official is liable for failure to intercede when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted).  Given the court's dismissal of plaintiffs' malicious prosecution and fair trial claims, it follows that there was nothing for which defendants had a need to "intervene," and, thus, plaintiffs' claim of failure to intercede must be dismissed as well.

**C.**   **Immunity**

County defendants argue that they are entitled to absolute prosecutorial immunity as to plaintiffs' claims because the conduct that serves as a basis for these claims was undertaken in County defendants' roles as advocates. (Dkt. No. 105, Attach. 19 at 11-20.) In response, plaintiffs argue that the relevant conduct was undertaken before probable cause existed, and, thus, they were acting as investigators and immunity does not apply to such conduct. (Dkt. No. 113 at 3-10.) The court agrees with County defendants.

"Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (internal quotation marks and citation omitted). "[A] prosecutor's functions preliminary to the initiation of proceedings include whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Id.* (internal quotation marks and citation omitted). However, absolute immunity only protects conduct that is "intimately associated with

the judicial process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and does not extend to the prosecutor's role as an investigator, *see Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).

After careful consideration of the parties' arguments and the evidentiary record, the record reveals that the actions by County defendants that form the basis of plaintiffs' claims were undertaken in their role as advocates, and, thus, they are entitled to prosecutorial immunity. *See Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (holding that prosecutorial functions immune from suit "include deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation"); *Bruno v. City of New York*, No. 17 Civ. 7552, 2019 WL 690340, at *11 n.9 (S.D.N.Y. Feb. 19, 2019) ("[T]he alleged falsification of evidence and the coercion of witnesses . . . have been held to be prosecutorial activities for which absolute immunity applies" (internal quotation marks and citations omitted)); *United States v. Enix*, 212 F. Supp. 3d 408, 409 n.3 (W.D.N.Y. 2016) ("The decision to immunize a witness to obtain his testimony is a core prosecutorial function." (citation omitted)); *Vasquez v. City of New York*, No. 14 Civ. 491, 2014 WL 5810111, at *8

20

(S.D.N.Y. Nov. 6, 2014) ("[A] prosecutor is entitled to absolute immunity for the factual investigation necessary to prepare a case. . . . Offering a witness immunity in exchange for his testimony is a necessary adjunct to that factual development." (citing *Mullinax v. McElhenney*, 817 F.2d 711, 715 (11th Cir.1987)).  Accordingly, plaintiffs' claims against County defendants are dismissed for this independent reason.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that all claims against Doe defendants are **DISMISSED** for failure to prosecute; and it is further

**ORDERED** that County defendants' motion for summary judgment (Dkt. No. 105) is **GRANTED**; and it is further

**ORDERED** that City defendants' motion for summary judgment (Dkt. No. 106) is **GRANTED**; and it is further

**ORDERED** that plaintiffs' complaint (Compl.) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 28, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge